253 F.3d 1 (D.C. Cir. 2001)
 National Exchange Carrier Association, Inc., Petitioner
v.
Federal Communications Commission and United States of America, Respondents
National Telephone Cooperative Association, Intervenor
 No. 00-1055
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued February 5, 2001
Decided June 15, 2001
 
 On Petition for Review of an Order of the Federal Communications Commission
 Richard A. Askoff argued the cause for petitioner. With him on the briefs were Kenneth A. Levy and Judith L. Harris.
 L. Marie Guillory and Daniel Mitchell were on the brief for intervenor National Telephone Cooperative Association.
 Laurel R. Bergold, Counsel, Federal Communications Commission, argued the cause for respondents. With her on the brief were Christopher J. Wright, General Counsel, John E. Ingle, Deputy Associate General Counsel, A. Douglas Melamed, Acting Assistant Attorney General at the time the brief was filed, U.S. Department of Justice, Robert B. Nicholson and Robert J. Wiggers, Attorneys.
 Before: Edwards, Chief Judge, Ginsburg and Tatel, Circuit Judges.
 Per curiam:
 
 
 1
 The National Exchange Carrier Association challenges an order of the Federal Communications Commission adopting a formula for distributing money from the Universal Service Fund (USF) to subsidize high-cost telephone service providers and thereby promote telephone subscribership. The petitioner claims that the Commission's order violates the Administrative Procedure Act because it arbitrarily and capriciously undercompensates telephone service providers, and it was adopted without adherence to the applicable procedures for public notice and comment. The NECA, however, fails to articulate an intelligible explanation of its substantive claim, and its procedural claim lacks merit. Accordingly, we deny the petition for review.
 
 I. Background
 
 2
 Telephone service in the United States is provided within each geographical area by a single local exchange carrier (LEC). The LEC connects long-distance calls originated by its subscribers to the long-distance carriers of their choice and connects long distance calls originated elsewhere to its subscribers. For providing this "exchange access" the LEC may obtain compensation from the long distance carriers either by filing its own access tariff with the Commission or by accepting compensation under a generally applicable formula adopted by the Commission. In order to effectuate the latter option, the Commission established an independent organization, the NECA, "to prepare and file access charge tariffs on behalf of all telephone companies that do not file separate tariffs." 47 C.F.R. 69.601(a). Among those nonfilers (called average schedule companies), any company whose local loop costs are 115% or more of the national average may receive additional compensation from the Commission, paid out of the Universal Service Fund pursuant to a set formula. 47 C.F.R. 36.631.
 
 
 3
 In October 1998 the NECA proposed a formula for calculating the USF payments to be made to average schedule companies in the coming year and the Common Carrier Bureau invited public comments on the proposal. The Bureau determined that using the proposed formula would substantially increase the number of companies receiving payments and increase by 33% the total amount paid to average schedule companies. The Bureau also expressed concern that the proposed formula did not well approximate the per loop costs of average schedule companies. In particular, the Bureau found that the formula overstated costs for two thirds of the average schedule companies sampled; indeed, more than half the companies that would receive USF payments under the NECA's formula were below the 115% threshhold of eligibility. Ultimately, the Bureau rejected the proposed formula and issued an order retaining the 1998 formula, as adjusted to reflect growth in the number of local loops served by the average schedule companies. See Staff Order, 14 FCC Rcd 4049, 4053 p 9.
 
 
 4
 The NECA filed an application for Commission review of the order, challenging it on both substantive and procedural grounds. The Commission denied the application, and the NECA filed a petition for review in this court.
 
 II. Analysis
 
 5
 The NECA argues that the Commission acted in an arbitrary and capricious manner, in violation of the Administrative Procedure Act, 5 U.S.C. 706(2)(A), by rejecting the NECA's proposed 1999 USF formula and adhering to the 1998 formula with an upward adjustment. The NECA admits, however, that its proposed formula does not accurately estimate the LECs' per loop costs. Its strategy is to confess and avoid, maintaining that the "cost per loop approach is problematic because it systematically understates USF payments to average schedule companies." Br. for Petitioner at 7. In a footnote, the NECA adds cryptically, "The reasons for this are complex, having to do with the fact that the USF rules contain a sharp payment 'thresholds' [sic] that limits USF payments to companies with loop cost in excess of 115% of the national average." Id. n.14.
 
 
 6
 The reasons may be complex, but if the NECA wanted to demonstrate that retaining the incumbent formula was arbitrary and capricious, then it needed to explain the reasons to the court. Instead, the petitioner purports to show the superiority of its own proposed approach, as follows:
 
 
 7
 Instead of attempting to model cost per loop amounts, NECA ... calculates the actual USF payment that each sample company would receive if it were to conduct a cost study. These calculated USF expense adjustments (payments) are then compared to available demand variables, and a formula is developed that predicts USF payments for individual companies.
 
 
 8
 This "expense adjustment" modeling approach not only avoids the systematic underpayment problem inherent in the cost per loop approach, it appears to conform more closely with the language of section 69.606 which requires that formulas simulate "disbursements" of representative cost companies (not "cost per loop" amounts or other intermediate steps in the process).
 
 
 9
 Without a grasp of what is wrong with the Commission's approach, however, the court cannot deem it arbitrary and capricious, much less appreciate the supposed superiority of the NECA's alternative.
 
 
 10
 Separately, the NECA argues, or at least observes, that "average schedule formulas are only intended to achieve a reasonable balance between accuracy and ease of administration," and no schedule will fit all companies perfectly. While no doubt true, that point falls well short of establishing that the Commission acted in an arbitrary and capricious manner in adjusting the prior year's formula.
 
 
 11
 Most likely there is more to the NECA's claim or it would not have litigated it to this point, but we are unable to tell what that more might be. Neither the petitioner nor the court gets any help from the Commission in this regard either; the Commission responds to the petitioner's brief more or less in kind, leaving the court with no greater grasp of what the parties are arguing about than what little we could glean from the petitioner's brief. The burden of persuasion being with the petitioner, however, the Commission's failings will not succor the NECA's case. Nor is it the court's duty to identify, articulate, and substantiate a claim for the petitioner. As we have said before, "this court tries not to base its decisions on mind reading." Goos v. Nat'l Ass'n of Realtors, 997 F.2d 1565, 1572 (1993).
 
 
 12
 In sum, the NECA has failed to make intelligible to the court any coherent argument in support of its substantive claim. That may reflect the court's own limitations as much as any failure on the petitioner's part; but that is a limitation with which both bench and bar must live. For the court's part, we take some comfort in thinking we have previously understood cases a good deal more complicated than this one.
 
 
 13
 The NECA also raises a procedural argument, namely that the Commission violated 553 of the Administrative Procedure Act by failing to follow notice and comment procedures in making the upward adjustment to the prior year's USF formula. The Commission first suggests that the petitioner lacks standing to challenge an adjustment in its favor, as though it were not injured by getting less of an adjustment than it sought. More seriously, the Commission argues that additional notice and comment were not required before it issued the order adjusting the prior year's formula because the adjustment was a "logical outgrowth" of the rule it had put out for comment. See Fertilizer Institute v. EPA, 935 F.2d 1303, 1311 (D.C. Cir. 1991).
 
 
 14
 As this court has explained, "the logical outgrowth test normally is applied to consider whether a new round of notice and comment would provide the first opportunity for interested parties to offer comments that could persuade the agency to modify its rule." Arizona Public Service Co. v. EPA, 211 F.3d 1280, 1299 (2000); see also Association of Battery Recyclers, Inc. v. EPA, 208 F.3d 1047, 1059 (D.C. Cir. 2000); First Am. Discount Corp. v. Commodity Futures Trading Comm'n, 222 F.3d 1008, 1014 (D.C. Cir. 2000). In this case, the NECA has had ample opportunity to argue to the Commission that the 1998 rule should be modified so as to increase USF payments to average schedule companies; indeed, that has been the NECA's purpose throughout. The NECA even argued specifically that, should the Bureau reject the NECA's proposed formula and retain the 1998 one instead, then it should not limit any upward adjustment in the 1998 formula to the rate of loop growth. Clearly, a new round of notice and comment would not provide the NECA its "first opportunity ... to offer comments" upon the order.
 
 
 15
 For the foregoing reasons, the petition for review is
 
 
 16
 Denied.