# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 6, 2006      Decided February 13, 2007

No. 05-1285

COLUMBIA GAS TRANSMISSION CORPORATION AND
COLUMBIA GULF TRANSMISSION COMPANY,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

CHARLOTTESVILLE, VIRGINIA AND
RICHMOND, VIRGINIA,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Barbara K. Heffernan* argued the cause for petitioners. With her on the briefs were *Debra Ann Palmer*, *William S. Lavarco*, *Stephen R. Melton*, *Kurt L. Krieger*, and *David P. Sharo*.

*Beth G. Pacella*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on

the brief were *John S. Moot*, General Counsel, and *Robert H. Solomon*, Solicitor.

Before: GARLAND and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Columbia Gas and Columbia Gulf ("Columbia"), petitioners here, entered into agreements with several local distribution companies according to which the latter received discounted service on the condition that they waive certain rights under the Natural Gas Act (the "Act"). Columbia filed the discounted rate agreements with the Federal Energy Regulatory Commission, which rejected them and held that Columbia either had to refile them as negotiated rate agreements or remove the waivers. Columbia petitioned for rehearing, and FERC denied the petition.

We deal here with two sets of issues. First, the Commission argues that we do not have jurisdiction to consider arguments that Columbia did not make in its petition for rehearing. We reject this jurisdictional challenge and treat all of Columbia's arguments as properly before us. Second, we review Columbia's assertions that FERC's orders are inconsistent with its precedents and that its determinations are otherwise arbitrary or capricious. We reject these challenges and affirm the Commission's orders.

* * *

Columbia Gas and Columbia Gulf are natural gas companies that provide various services under Commission-approved tariffs, including the transportation and delivery of

natural gas. Both companies entered into agreements to serve three large local distribution companies—Mountaineer Gas Company, The Cincinnati Gas & Electric Company, and The Union Light Heat & Power Company—at discounted rates (collectively, the "discount shippers"). In addition to offering the discounts, Columbia waived its right under § 4 of the Act, 15 U.S.C. § 717c, to seek Commission approval for an increase in rates to be charged the discount shippers, and promised that they would receive the benefit of any Commission-approved reduction in the discounted rates. Reciprocally, the discount shippers agreed to waive their right under § 5 of the Act, 15 U.S.C. § 717d, to challenge any of Columbia's rates as unjust or unreasonable. Importantly, the § 5 waivers covered not only the discounted rates but also precluded the discount shippers from challenging the rates for any of Columbia's services.

FERC initially rejected the agreements, *Columbia Gulf Transmission Corp.*, 109 F.E.R.C. ¶ 61,152 (2004) ("Initial Order"), on two grounds. First, it said that § 5 waivers were not appropriate in discount agreements but could be included only in negotiated rate agreements. (Columbia customers who intervened before the Commission argued that the distinction between discount agreements and negotiated rate agreements was substantive and not semantic. If they were discount agreements, the intervenors argued, Columbia could have sought a "discount adjustment" in its next tariff filing and thereby possibly recovered the discount's cost from Columbia's other customers. If they were negotiated rate agreements, this cost-recovery opportunity would have been unavailable. Our disposition doesn't require us to sort this out.) Independently, FERC objected to the scope of the agreements' § 5 waivers. FERC noted that it had previously approved such waivers when they applied only to the discounted rates and services, not, as in these agreements, to both discounted and non-discounted rates. In accordance with

the Commission's order, Columbia removed the § 5 waivers from the agreements, but petitioned for rehearing, attacking both of the Commission's reasons.

FERC denied the petition for rehearing, but marshaled slightly different reasons. *Columbia Gulf Transmission Corp.*, 111 F.E.R.C. ¶ 61,338 (2005) ("Rehearing Order"). The Commission continued to maintain that the discount shippers' § 5 waivers were impermissibly broad; it reasoned that a pipeline should not be permitted "to condition the offering of a discount for one service for which a shipper may have competitive alternatives on limiting the shipper's section 5 rights to challenge the pipeline rates for other services over which the pipeline does have market power." *Id*. at 62,507 P 14. It also argued that Columbia behaved discriminatorily by offering discounts to (and extracting waivers from) only its largest customers. This would disadvantage the small fry, which, according to the Commission, might lack the resources to bring § 5 challenges on their own but would be denied the benefit of challenges by the large discount shippers (who would not be bringing challenges at all). *Id*. at 62,507 PP 15–16. Columbia filed a timely petition for review.

\* \* \*

FERC argues that we lack jurisdiction to consider Columbia's arguments addressed to Commission justifications that emerged for the first time in the Rehearing Order. Section 19(a) of the Act, 15 U.S.C. § 717r(a), requires that a party petition FERC for rehearing before it challenges a Commission order in court. Section 19(b) goes on to say that "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 15

U.S.C. § 717r(b). We have frequently remarked on the strictness of the jurisdictional provisions in the Act. See, e.g., *ASARCO, Inc. v. FERC*, 777 F.2d 764, 774 (D.C. Cir. 1985). The Commission argues that Columbia's petition for rehearing did not address FERC's concerns about market power and undue discrimination and that, consequently, we may not consider any such arguments now. Of course the reason Columbia hadn't attacked those arguments in its petition for rehearing is plain: FERC hadn't yet revealed them. FERC argues, however, that § 19 conditions Columbia's ability to attack those justifications in court on its having advanced its critiques in a second petition for rehearing.

Our cases support the Commission's claim only up to a point. Where the Commission on rehearing changes its actual order adversely to the petitioner—not merely the reasoning—it is commonly treated as having issued a new order. While a party may challenge the new order in court without a new petition for rehearing, such a challenge can attack only the original adverse provisions, not the new sources of complaint. See *Canadian Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289, 296–97 (D.C. Cir. 2001); *Town of Norwood v. FERC*, 906 F.2d 772, 774–75 (D.C. Cir. 1990). Here FERC reached exactly the same result in the Rehearing Order; it simply marshaled new arguments to support the old outcome. In such a case, we have held, FERC "does not thereby transform its order denying rehearing into a new 'order' requiring a new petition for rehearing before a party may obtain judicial review." *Southern Natural Gas Co. v. FERC*, 877 F.2d 1066, 1073 (D.C. Cir. 1989). Thus, when a party proceeds to court in such situations, it may have a "reasonable ground" for not having earlier raised its objections to the rationale underpinning the rehearing order. *Id.* at 1072.

We adopted this approach in *Southern Natural* because "[o]therwise, we would 'permit an endless cycle of applications for rehearing and denials,' limited only by FERC's ability to think up new rationales." *Id.* at 1073 (quoting *Boston Gas Co. v. FERC*, 575 F.2d 975, 978 (1st Cir. 1978)). We applied the same reading of § 19 in *Washington Water Power Co. v. FERC*, 201 F.3d 497, 501 (D.C. Cir. 2000).

The principle of *Southern Natural* and *Washington Water* is that when a party filing a petition for rehearing was not on notice of the rationale that FERC would adopt in the rehearing order, the party has a "reasonable ground" for not having addressed that rationale in its petition and accordingly may do so for the first time in court. And a party is on notice only of ideas that FERC has addressed in the initial order with reasonable specificity, but not of ones to which the Commission has only alluded vaguely. See *Southern Natural*, 877 F.2d at 1072.

We note that the exhaustion requirement in § 19(b) of the Act is, on its face, similar to provisions in other statutes. See *Washington Ass'n for Television and Children v. FCC*, 712 F.2d 677, 682 & n.6 (D.C. Cir. 1983) (noting that some statutes, such as the National Labor Relations Act ("NLRA"), explicitly permit exceptions based on "extraordinary circumstances" and inferring such an exception in the Communications Act's exhaustion requirement, 47 U.S.C. § 405). Yet cases under the Natural Gas Act and the Federal Power Act, such as *Southern Natural* and *Washington Water*, find a "reasonable ground" for failure to exhaust more readily than decisions under the NLRA, the Communications Act or kindred provisions, where we regularly reject the excuse that the agency came up with the justification under attack only in its ultimate decision; the challenger's remedy, we say, is to seek rehearing. See, e.g., *Washington Ass'n*, 712 F.2d at 683;

*Epilepsy Foundation of Northeast Ohio v. NLRB* , 268 F.3d 1095, 1101–02 (D.C. Cir. 2001). A possible explanation for the apparent anomaly is that the Natural Gas Act and the Federal Power Act require a petition for rehearing before any judicial relief, so that the petitioner has by definition already been through two rounds of agency process. This gives some force to *Southern Natural*'s concern about an "endless cycle." Exhaustion indeed! We have found no cases addressing the application of conventional exhaustion requirements to an agency explanation that emerged only on rehearing.

For each of Columbia's arguments, we will consider whether FERC's Initial Order placed Columbia on notice of the rationales that the Commission eventually adopted in the Rehearing Order.

* * *

Columbia claims that FERC contravened its own precedents when it decided that the § 5 waivers were overly broad. Since Columbia raised the objection in its petition for rehearing, we clearly have jurisdiction. We review under the arbitrary or capricious standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). See *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995). Importantly, we also defer to the Commission's interpretations of its own precedents. See *Cassell v. FCC*, 154 F.3d 478, 483 (D.C. Cir. 1998).

In the Rehearing Order, FERC explained "the Commission's general policy of restricting the use of [§ 5 waiver] clauses to relatively narrow situations." Rehearing Order at 62,508 P 20. FERC has made similar statements before. See *Algonquin Gas Transmission, LLC*, 111 F.E.R.C. ¶ 61,003 at 61,006 P 9 (2005) ("[T]he Commission has been

particularly reluctant to sanction a NGA section 5 waiver provision in a particular transaction, where the customer waives its NGA section 5 rights not only as to the rate for its particular transaction at issue, but as to the pipeline's rates for all services."). The Commission acknowledged that it had approved broader § 5 waivers in other cases, including *Algonquin*, but it distinguished those cases. As to two cases that Columbia says involved broad § 5 waivers—*Vector Pipeline*, 85 F.E.R.C. ¶ 61,083 (1998), *reh'g denied*, 87 F.E.R.C. ¶ 61,225 (1999), and *Alliance Pipeline*, 80 F.E.R.C. ¶ 61,149 (1997), *modified in part*, 84 F.E.R.C. ¶ 61,239, *reh'g denied*, 85 F.E.R.C. ¶ 61,331 (1998)—FERC noted that in those cases there was no significant discussion of the waiver issue and that in any event the rates in question were "available to all shippers desiring the rates during the subscription phase of the project,"[1] so that the cases didn't involve the market power or discrimination issues posed by Columbia's agreements. Rehearing Order at 62,508 n.25.

As to *Algonquin* itself, the Commission pointed to features of that case sharply reducing the risk of discrimination: Algonquin had offered to execute such agreements with all similarly situated customers, and it had balanced the § 5 waivers by the customers with a pipeline agreement not to seek any generally applicable rate increases under § 4. Rehearing Order at 62,507 P 17. Columbia has not

---

[1] We infer that FERC emphasizes the subscription phase, when a pipeline firm is seeking commitments from potential customers for a new pipeline, on the ground that then a pipeline's market power is relatively low: potential shippers will have either the alternative of continuing to use their then-current carriers, or, if they have no current carrier because they haven't yet constructed facilities to use the proposed service, of choosing to locate their facilities elsewhere if they decline the proposed new service.

undercut these alleged distinctions, so we have no reason to find that the Commission has diverged from its precedents.

Columbia's second objection pertains to FERC's economic rationale justifying a restriction on the scope of § 5 waivers. FERC essentially argued that companies like Columbia should not be allowed to exploit market power and demand § 5 waivers with respect to rates that are not the subject of discounts. Rehearing Order at 62,506–07 P 14. In response, Columbia maintains that all of the rates—discounted and non-discounted—are interrelated, so that relief under § 5 for one rate entails changes in all others. Because Columbia didn't object to the market power rationale in its petition for rehearing, we must consider whether the Initial Order adequately placed Columbia on notice of the rationale it now attacks. At a high level of abstraction, the Initial Order did discuss FERC's concern about discount agreements and the breadth of the § 5 waivers. But the Rehearing Order introduced a new basis for concern—the fear that in markets where shippers had alternatives (i.e., competitive markets) pipelines would bargain for advantages aimed at defeating shippers' regulatory protections in non-competitive markets. See *id*. Because FERC first advanced the market power argument in the Rehearing Order, Columbia is not jurisdictionally barred from urging an objection here.

Although the objection is properly before us, it is unavailing. As a preliminary matter, we note that Columbia first articulated its objection in a footnote in its opening brief, a dubious practice. *United States v. Whren*, 111 F.3d 956, 958 (D.C. Cir. 1997). Furthermore, the argument in the opening brief acquires a completely contradictory form by the time it arrives at the reply brief. Initially Columbia argued that the rates for various services rise and fall together. Petitioners' Br. at 28 n.30 (arguing that if a petitioner were to prevail on a § 5 complaint with respect to the rate for one service, the rates

for all other services would correspondingly fall). By contrast, the reply brief styles ratemaking as a "zero sum" game, so that if "the costs allocated to one service are reduced . . . the costs allocated to other services necessarily increase." Reply Br. at 15–16. But it is not "the court's duty to identify, articulate, and substantiate a claim for the petitioner," *National Exchange Carrier Ass'n v. FCC*, 253 F.3d 1, 4 (D.C. Cir. 2001), and we decline to do so here. FERC has articulated a market power rationale that isn't transparently defective, and Columbia hasn't marshaled a coherent critique (it never developed either of the two contradictory theories). So we cannot find the Commission's conclusion arbitrary or capricious. See 5 U.S.C. § 706(2)(A).

Finally, Columbia argues that FERC erroneously decided that Columbia's agreements with large shippers are unduly discriminatory against small shippers. In exchange for discounts on certain rates, the large shippers waived their right to challenge the rate structure or the "recourse rates." Rehearing Order at 62,507 P 15. (The latter are the traditional cost-of-service rates in the pipeline's tariff, for which a shipper may always opt in default of an attractive negotiated rate. *Northern Natural Gas Co.*, 105 F.E.R.C. ¶ 61,299 at 62,442 P 3 (2003)). FERC reasoned that because small shippers often don't have the resources to mount § 5 challenges, Columbia's agreements with large shippers significantly insulated its rate structure from challenges. Because the Commission didn't advance this rationale about small shippers until the Rehearing Order at 62,508 P 20, Columbia is not jurisdictionally barred from objecting here.

On the merits of the claim, Columbia fares less well. It attacked FERC's logic by noting that even if § 5 waivers are narrow in scope, large shippers will not challenge other rates unless the expected benefit of the challenge outweighs the discount. Furthermore, Columbia observed that the interests

of large and small shippers often are not parallel, meaning that small shippers do not necessarily benefit from large shippers' § 5 challenges. But to say that FERC's preservation of the large shippers' right to bring challenges is an imperfect protection for small shippers' interests is a far cry from establishing that the benefits of FERC's policy are outweighed by its drawbacks. Columbia does not challenge FERC's basic theory that the broad § 5 waivers impede the readiness of large shippers to bring challenges that might also benefit small shippers. To the extent that the agreements at issue here likely operate to the detriment of small shippers at the margin, the Commission's logic is sound. We see no basis for concluding that FERC's rationale is arbitrary or capricious.

* * *

For the foregoing reasons, we uphold the Initial and Rehearing Orders against all challenges by Columbia.

*So ordered.*