# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 8, 2017        Decided March 6, 2018

No. 16-1296

DUKE ENERGY CAROLINAS, LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

---

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

---

*John A. Whittaker IV* argued the cause and filed the briefs for petitioner.

*Susanna Y. Chu*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, General Counsel, and *Robert H. Solomon*, Solicitor.

Before: GARLAND, *Chief Judge*, and ROGERS and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  In anticipation of expiration of the fifty-year license for the Catawba-Wateree Project, Duke Energy Carolinas, LLC ("Duke Energy") filed an application with the Federal Energy Regulatory Commission for a new fifty-year license.  The Commission, upon determining that construction and environmental measures under the new license were "moderate" in nature and scope, granted a forty-year license.  Duke Energy petitions for review, contending principally that the Commission failed to treat it like similarly-situated applicants that received fifty-year licenses and announced a new qualitative approach to determining license terms without prior notice or reasoned analysis, leaving applicants and courts without objective standards.  According due deference to the Commission's expertise in determining whether measures under a license are moderate or extensive and to its interpretation of its precedent and policy choices, we deny the petition for review.

## I.

The Federal Power Act authorizes the Commission to issue licenses for hydroelectric projects for terms of up to fifty years.  16 U.S.C. § 799.  Upon expiration of a license, the Commission may issue a new license for a term that is in the public interest, but for not less than thirty nor more than fifty years from the date it issues.  *Id.* § 808(a),(e). The Commission generally issues a thirty-year license term for projects with "little or no" redevelopment, new construction, new capacity, or environmental mitigation and enhancement measures; a forty-year license term for projects involving "moderate" measures; and a fifty-year license for projects involving "extensive" measures.  *See, e.g.*, *PUD No. 1 of Chelan Cnty.*, 117 FERC ¶ 62,129 at ¶ 128 (2006); *PUD No. 1 of Pend Oreille Cnty.*, 112 FERC ¶ 61,055 at ¶ 127 (2005); *Portland General*

*Electric Co.*, 111 FERC ¶ 61,450 at ¶ 167 (2005); *N.Y. Power Auth.* (*St. Lawrence*), 105 FERC 61,102 at ¶ 225 (2003).

The Catawba-Wateree Project for which Duke Energy sought a new license for fifty years includes eleven developments along hundreds of miles of the Catawba and Wateree Rivers in North Carolina and South Carolina. The original fifty-year license was set to expire on August 31, 2008, and two years prior Duke Energy entered into a Comprehensive Relicensing Agreement with 70 entities that specified measures to be undertaken upon relicensing. It filed the agreement with its application for a new license. The Commission determined, based on staff recommendations in light of public comments, various filings, and a final environmental impact statement, that under its general licensing policy the appropriate license term was forty years. *See Duke Energy Carolinas, LLC*, 153 FERC ¶ 62,134 at ¶¶ 6-10, 277 (2015) ("*License Order*"). It concluded the license authorizes "a moderate amount of new construction (*e.g.*, fish passage facilities and bladder dam on the Wateree spillway) and new environmental mitigation and enhancement measures (*e.g.*, higher minimum flow releases from [six developments]; recreation flow releases from [five developments]; diadromous fish monitoring associated with fish passage program, sturgeon monitoring, and recreation development)." *Id.*

Duke Energy requested rehearing, arguing the license should be longer, claiming the Commission had failed to consider all of the license measures and their costs and including with its request a list of the measures required under the new license. In addition to the costs of these measures, Duke Energy stated it had spent about $54 million on new construction to implement measures proposed in its August 2006 application and required by the Relicensing Agreement before the new license issued, and had incurred $111 million in

costs pursuing relicensing.  Duke Energy pointed to instances in which the Commission had granted a fifty-year license based on a project's annual cost and the impact of costs on the total annual benefit of the project and argued, based on its estimate of total and annual costs for the Catawba-Wateree Project, that it was entitled to the same.  It also claimed the signatories to the Relicensing Agreement had agreed to a fifty-year license term.  The Commission denied rehearing and affirmed the forty-year license term.  *Duke Energy Carolinas, LLC*, 156 FERC ¶ 61,010 at ¶¶ 13-14 (2016) ("*Rehearing Order*").  Duke Energy petitions for review.

## II.

The issue on appeal is whether the Commission reasonably found that the measures required by the hydroelectric license it issued to Duke Energy were "moderate," warranting a forty-year license term under the Commission's precedents.  "In a [hydroelectric] licensing decision such as this, where few explicit statutory provisions govern, [the court's] role is narrowly circumscribed."  *U.S. Dept. of Interior v. FERC*, 952 F.2d 538, 543 (D.C. Cir. 1992).  The court will "defer to the agency's expertise . . . so long as its decision is supported by substantial evidence in the record and reached by reasoned decisionmaking."  *Turlock Irrigation District v. FERC*, 786 F.3d 18, 25 (D.C. Cir. 2015) (internal quotation marks and citations omitted).  Essentially, the court must "look to whether [the Commission] 'articulated a rational explanation for its action'" and either acted "consistent with . . . or offer[ed] a reasoned basis for its departure from precedent."  *Williams Gas Processing v. FERC*, 475 F.3d 319, 326 (D.C. Cir. 2006) (quoting *AT & T Inc. v. FCC*, 452 F.3d 830, 837 (D.C. Cir. 2006); *ConAgra Inc. v. NLRB*, 117 F.3d 1435, 1443 (D.C. Cir. 1997)).

Duke Energy's principal challenge to the License and Rehearing Orders is that the Commission was arbitrary and capricious because it failed to treat Duke Energy like similarly-situated applicants with similar costly projects that received fifty-year license terms and offered no reasoned explanation for the disparate treatment. *New York Power Authority*, 120 FERC ¶ 61,266 (2007), in its view, exemplifies the Commission policy of granting fifty-year license terms for projects based on their costs. There, the Commission re-licensed for a fifty-year term the Niagara Project that spanned the Niagara River connecting Lake Erie and Lake Ontario and that, pursuant to statute, has "the capacity to use all of the United States' share of Niagara River water available for power generation," *New York Power Authority*, 118 FERC ¶ 61,206 at ¶¶ 4, 13 (2007); *New York Power Authority*, 120 FERC ¶ 61,266 at ¶ 19 (2007).

The Commission acknowledged that it "did use cost as a significant part of its analysis [of the Niagara Project]," but stated that its precedent "does not generally treat cost as dispositive." *Rehearing Order* ¶ 14 n.17. For instance, in *Consumers Power Co.*, 68 FERC ¶ 61,077 (1994), the Commission announced its general standard, stating it issues "new licenses for [forty] years or more for projects which include substantial new construction or capacity increases," 68 FERC ¶ 61,077 at 61,383-84, and observing that "licenses of longer duration . . . ease the economic impact of the new costs[,] . . . encourage better comprehensive development of the renewable power generating resource[,]" and ease the burden of "substantial or costly environmental mitigation and enhancement measures," *id.* at 61,384. But the Commission has not interpreted this precedent to support a cost-determinative approach. *Rehearing Order* ¶ 14. Any lingering ambiguity was clarified in *Duke Energy Progress*, 153 FERC ¶ 61,056, ¶¶ 38, 41-42 (2015) and in the orders now on review.

The Commission also stated that it "agree[s] with Duke Energy that the measures required with respect to the substantially larger Niagara Project do not appear greater than those required for the Catawba-Wateree Project," but explained it "view[s] that older case as an outlier that is not consistent with the majority of more recent orders." *Id.* ¶ 22. It cited the project in North Carolina in *Duke Energy Progress, Inc.*, 151 FERC ¶ 62,004 at ¶ 232, *aff'd on reh'g*, 153 FERC ¶ 61,056 (2015) and the project in Washington State in *Public Utility Dist. No. 1 of Douglas County, Wash.*, 141 FERC ¶ 62,104 at ¶ 40 (2012), *aff'd on reh'g*, 143 FERC ¶ 61,130 (2013). For each, the Commission granted forty-year licenses for projects involving new environmental and related construction measures that were like those for the Catawba-Wateree Project. *Id.* ¶ 13 & n.14. The Commission had looked at the measures qualitatively. *Id.* ¶¶ 13 & n. 14, 14.

Other precedent cited by Duke Energy was also distinguishable because for those projects the Commission had "relied on the general extent of the measures required, rather than . . . on a quantitative analysis of costs." *Id.* ¶ 21 & n. 42 (citing *Chelan Cnty.*, 117 FERC at ¶ 129; *Pend Oreille Cnty.*, 112 FERC at ¶ 127; *St. Lawrence*, 105 FERC at ¶ 228). Where the Commission approved fifty-year license terms, the parties to the relicensing agreement had specifically agreed to a fifty-year term or the projects were significantly smaller, meaning "the measures required there are not analogous to the measures required . . . with respect to the much larger Catawba-Wateree project." *Rehearing Order* ¶ 21 & n. 42 (citing *Chelan Cnty.*, 117 FERC at ¶ 129; *Pend Oreille Cnty.*, 112 FERC at ¶ 127; *St. Lawrence*, 105 FERC at ¶ 228). Duke Energy's position that it "should receive a [fifty]-year license because the signatories to the Relicensing Agreement support such a license term overstates the language of the agreement," *id.* ¶ 24; the Commission pointed out that the language "does not

provide unequivocal support for a [fifty]-year license, but rather . . . support" for a new license "that is not less than [forty] years nor more than [fifty] years," *id.* (internal quotation marks and italics omitted).

Recognizing that "Duke Energy predominantly relies on costs as the basis for supporting a longer license term," the Commission gave a fulsome response. *Id.* ¶ 14. As a general matter, it explained, the Commission "do[es] not subject [cost] estimates to the type of rigorous analysis that would be necessary were [it] to treat them as matters of absolute fact." *Id.* Because "cost estimates can fluctuate widely over time," it concluded, "a strictly quantitative analysis is problematic." *Id.* ¶ 15. More particularly, it reflected, that although "costs can provide some indication of the extent of required measures, costs alone are never entirely dispositive, especially where, as here, Duke Energy's cost data are not reliable." *Id.* ¶ 14. "In response to Commission staff's request to simply update the cost estimates . . . Duke Energy instead filed new estimates — unsupported by any explanation." *Id.* ¶ 15. The Commission noted as well that in responding Duke Energy included a $40 million gate instead of the $10 million bladder dam called for in the License Order. *Id.*

Because the Commission acknowledged that its policy has shifted and explained it, *see Westar Energy, Inc. v. FERC*, 568 F.3d 985, 989 (D.C. Cir. 2009)(citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009)), the Commission could reasonably conclude its Niagara Project precedent and other precedent on which Duke Energy relies did not "require [it] to extend [Duke Energy's] license term." *Rehearing Order* ¶¶ 14 n.17, 22.

Responding to Duke Energy's objection to the characterization of the Catawba-Wateree measures as

"moderate," the Commission pointed out that "[u]nder the new license, Duke Energy will not be constructing extensive new facilities, adding substantial capacity, or complying with extensive new environmental measures, so as to justify a [fifty]-year license term." *Id.* ¶ 13. Listing "[t]he most costly new measures" under the license, the Commission explained that "[t]he nature and extent of these measures are not unusual for a large-sized project like the . . . Catawba-Wateree Project and are similar to those required in other recent licenses that received [forty]-year terms." *Id.* ¶ 13 & n.14 (citing *Duke Energy Progress, Inc.*, 151 FERC ¶ 62,004 and *Public Utility Dist. No. 1 of Douglas Cnty., Wash.*, 141 FERC ¶ 62,104).

Duke Energy's objection to the Commission's reliance on its recent precedent is not persuasive. *See* Reply Br. 16. It is true that the license in one case was issued after Duke Energy filed its application for re-licensing, and that the other case involved a project that was significantly less costly than the Catawba-Wateree Project going forward. Duke Energy concludes these circumstances reinforce the conclusion that the Commission failed to treat it like similarly situated applicants. For instance, it suggests that the *Duke Energy Progress* decision was rendered over eleven years after Duke Energy had relied on the Commission's cost-based approach in *Consumers Power* and *New York Power Authority* to engage in settlement talks with stakeholders and agree to submit measures it concluded would warrant a fifty-year license, and over nine years after Duke Energy submitted its re-license application.

The Commission acknowledges that its license term determinations are fact intensive as each project is unique, *Rehearing Order* ¶ 23, and on rehearing offered, as discussed, a sufficient comparative analysis, *id.* ¶¶ 13 & n. 14, 21-22. Moreover, the Commission observed that Duke Energy "does not suggest that it cannot recoup its costs within [forty] years

or that the license term in any other way causes hardship to it." *Id.* ¶ 25. To the extent Duke Energy objects generally that the Commission's qualitative approach amounts to a "'we-know-it-when-we-see-it' approach," Pet'r's Br. 47-48, the court notes that the Commission has adopted a license policy going forward using a forty-year term as the default, with variations for other terms in response to a number of factors. *See Policy Statement on Establishing License Terms for Hydroelectric Projects*, 161 FERC ¶ 61,078 (Oct. 19, 2017). This would suggest that remanding for greater clarity by the Commission would have no practical utility as the policy on which the Commission would rely is clear.

Determining the scope and nature of measures required under a hydroelectric power license invoke the technical expertise of the Commission to which the court generally defers. *Turlock Irrigation District*, 786 F.3d at 25-26. Whether the requirements of a hydroelectric license issued by the Commission constitute "moderate" as opposed to "extensive" measures under Commission precedent seems "a classic example of a factual dispute the resolution of which implicates substantial agency expertise." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 376-77 (1989). Likewise, the court will generally "defer to the Commission's interpretations of its own precedents." *Columbia Gas Transmission Corp. v. FERC*, 477 F.3d 739, 743 (D.C. Cir. 2007). Duke Energy makes little effort to distinguish the type of measures under the new license from those that merited forty-year terms, and the Commission's response in the challenged orders fully met Duke Energy's objection that the Commission failed to consider all of the measures required under the new license and reasonably explained the basis for its "moderate" determination. The Commission stated that it was unclear whether all of Duke Energy's listed license measures were new

and that not all of Duke Energy's cost estimates were supported. *Rehearing Order* ¶¶ 15, 23 n.45.

Finally, Duke Energy contends that the Commission failed to address legitimate arguments against applying its long-standing policies not to consider pre-license and license preparation costs in determining the appropriate license term. The Commission explained that Duke Energy's reliance on "expenditures [of $54 million] it incurred prior to license issuance to implement certain measures proposed in its August 2006 application," and on expenses for preparation of the re-license application were misplaced in view of the Commission's long-standing policies: In determining an appropriate license term, the Commission will "only consider measures required for the first time in the new license." *Id.* ¶¶ 18-19 & n.30. In determining a project's economic benefits, the Commission will consider the "costs of the relicensing process," which it considers "are not relevant in considering the appropriate license term." *Id.* ¶ 19. Invocation of its policy against counting such expenditures is insufficient, Duke Energy maintains, because it "never explained *why* such costs were not relevant" or addressed the argument that "not considering such costs was contrary to the public interest goals of *Consumers Power*." Pet'r's Br. 55.

But reliance on long-standing policies generally requires no elaborate explanation. *See Michigan Consolidated Gas Co. v. FERC*, 883 F.2d 117, 122-23 (D.C. Cir. 1989). Duke Energy has not shown either policy is unlawful on its face, much less that a policy against double counting the same measure under multiple licenses is unreasonable. Here, the Commission pointed out that Duke Energy "subsequently made the decision to seek the license amendments required to complete the measures sooner, rather than wait until its new license was issued," *Rehearing Order* ¶ 19. Further, the Commission noted

that some of Duke Energy's cost estimates were not fully supported, *id.* ¶ 22, or were inconsistent with the new license because it was unclear that all the enhancement and mitigation measures are new measures, *id.* ¶ 23 n.45. Duke Energy's effort to avoid the plain meaning of the staff request to update the cost estimates is unpersuasive; as license applicant it had every incentive to explain the basis for its cost estimates and it cannot prevail by shifting the burden of clarification to the Commission. *See* Pet'r's Br. 42-44. Nor could overreading of the signatories' agreement support a fifty-year term. *Rehearing Order* ¶ 24.

Accordingly, we deny the petition for review.