# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 20, 2023          Decided July 21, 2023

No. 22-1146

FORE RIVER RESIDENTS AGAINST THE COMPRESSOR STATION,
ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

ALGONQUIN GAS TRANSMISSION, LLC, AND INTERSTATE
NATURAL GAS ASSOCIATION OF AMERICA,
INTERVENORS

---

Consolidated with 22-1147

---

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

---

*Michael H. Hayden* argued the cause and filed the briefs for petitioners. *Crystal Huff* entered an appearance.

*Jared Fish*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on

the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Jeremy C. Marwell* argued the cause for respondent-intervenors Algonquin Gas Transmission, LLC, and the Interstate Natural Gas Association of America. With him on the joint brief were *Michael Diamond*, *Paul Korman*, *Joan Dreskin*, and *James T. Dawson*.

Before: SRINIVASAN, *Chief Judge*, MILLETT, *Circuit Judge*, and TATEL, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Fore River Residents Against the Compressor Station is an organization whose members live near a natural gas compressor station recently built in Weymouth, Massachusetts, a densely populated suburb of Boston. In these consolidated petitions, the Fore River Residents, along with two local residents, two municipalities, and Food and Water Watch, challenge actions taken by the Federal Energy Regulatory Commission allowing the compressor station to be built and to commence operation. Because we lack jurisdiction over the petitions, we dismiss them both.

**I**

Algonquin Gas Transmission, LLC, owns and operates the Algonquin natural gas pipeline that runs between New Jersey and northern Massachusetts, connecting much of New England to a pipeline network that runs as far as Texas. *City of Boston Delegation v. FERC*, 897 F.3d 241, 246 (D.C. Cir. 2018).

In 2017, the Federal Energy Regulatory Commission granted Algonquin a certificate of public convenience and necessity that allowed it and the owner of the neighboring Maritimes & Northeast pipeline to undertake a series of upgrades. *See Town of Weymouth v. FERC*, No. 17-1135, 2018 WL 6921213, at *1 (D.C. Cir. Dec. 27, 2018) (per curiam). Those upgrades are known collectively as the Atlantic Bridge Project ("Project"). As part of the Project, Algonquin planned to build a new compressor station in Weymouth, Massachusetts. The compressor station would pressurize gas traveling north towards Maine.

The Town of Weymouth, as well as several residents and environmental groups, petitioned this court to overturn the Commission's certification decision for the Project. This court found no relevant error in the Commission's decision and denied the petition. *See Town of Weymouth*, 2018 WL 6921213, at *1. The Commission's certificate gave Algonquin until January 25, 2019, to complete construction of the Project.

The petitions before us seek review of two orders that followed the Commission's issuance of the certificate of public convenience and necessity.

**A**

The first challenged order concerns Algonquin's inability to meet the January 25, 2019, construction deadline. Under the terms of the certificate issued by the Commission, Algonquin needed state and local environmental and zoning approval for its construction projects. When Algonquin tried to obtain the relevant permits, two different Massachusetts administrative law judges stayed state administrative proceedings until Algonquin obtained federal court rulings

determining whether those state and local environmental and zoning laws are preempted by the Natural Gas Act, 15 U.S.C. § 717 *et seq.* Algonquin subsequently obtained two separate declaratory judgments in federal court holding that the state and local laws were preempted. That administrative and litigation process took more than the two years that had been allotted for construction. *See Algonquin Gas Transmission, LLC v. Town of Weymouth*, 365 F. Supp. 3d 147 (D. Mass. Feb. 11, 2019); *Algonquin Gas Transmission, LLC v. Weymouth Conservation Comm'n*, No. 17-10788, 2017 WL 6757544 (D. Mass. Dec. 29, 2017), *aff'd*, 919 F.3d 54 (1st Cir. March 19, 2019).

On the morning of December 26, 2018, with the January 2019 construction deadline looming and the final declaratory judgment action not yet resolved, Algonquin asked the Commission for a two-year extension of time to complete the Project. Shortly before Noon that same day, Algonquin's extension request was summarily approved by a local Commission Branch Chief.

The petitioners in this case are the City of Quincy, Massachusetts, the Town of Braintree, Massachusetts, Michael H. Hayden and Rebecca Haugh, two individuals whose homes are located close to the compressor, and two organizations, Food & Water Watch and Fore River Residents Against the Compressor Station. Because the claims of the petitioners are substantially identical, and for ease of reference, we refer to them collectively as the "Fore River Residents." The Fore River Residents (excluding the City of Braintree) filed with the Commission a petition for rehearing of the extension decision. They argued that (i) the Branch Chief lacked the power to grant the extension request, (ii) the short turnaround time evidenced

unreasoned decision-making, and (iii) the public should have had a reasonable opportunity to submit adverse comments.[1]

After extensive briefing, the Commission denied rehearing. Order Denying Rehearing ("2020 Extension Rehearing Order"), 170 FERC ¶ 61144 (Feb. 21, 2020), J.A. 326. The Commission explained, first, that its regulations fully authorized the Director of the Office of Energy Projects to grant extensions of time, and that it was "appropriate" for the Director to have "further sub-delegated" that authority to the Branch Chief. *Id.* ¶¶ 7, 11, J.A. 328, 330.

Second, the Commission found nothing untoward about how quickly the extension was granted since the Branch Chief had "closely followed" the unfolding administrative proceedings and preemption litigation, and so already was aware of why Algonquin would need additional time. 2020 Extension Rehearing Order ¶ 38, J.A. 342.

Finally, the Commission agreed with the Branch Chief that there was good cause to grant the extension. The record contained no evidence of "any environmental changes in the project area or any new information" that would have led to a denial of the extension request. 2020 Extension Rehearing Order ¶ 17, J.A. 335. And Algonquin had "demonstrated good cause" by showing its diligence in pursuing state permits as quickly as possible. *Id.* ¶ 33, J.A. 341.

With the extension approved, Algonquin proceeded to build the Weymouth Compressor and the other remaining

---

[1] The Town of Braintree failed to file a petition for rehearing of the extension decision, so we lack statutory jurisdiction to hear its petition challenging the extension. *See New England Power Generators Ass'n v. FERC*, 879 F.3d 1192, 1198 (D.C. Cir. 2018).

components of the Project. The Project was completed in September 2020.

**B**

The second order to which the Fore River Residents object came almost two years after the Extension Order, when construction was substantially complete. On September 16, 2020, Algonquin requested the Commission's permission to bring the now-built Weymouth Compressor and the rest of the Project online. Algonquin appended to its request proof of its environmental remediation of the construction site and its compliance with all other certificate conditions. *See* J.A. 357–377. In a one-page order issued on September 24, 2020, a member of the Commission's staff granted Algonquin's request to start operations ("In-Service Authorization Order").

Neither Algonquin's request nor the Commission's authorization mentioned a serious incident that had occurred during the Weymouth Compressor's safety testing. On September 11, 2020, an O-ring gasket failed within the compressor, triggering "the manual operation of the emergency shutdown system and the release of approximately 169 thousand cubic feet * * * of natural gas." Pipeline & Hazardous Materials Safety Admin., Corrective Action Order at 1 (Oct. 1, 2020), J.A. 395.

Then, just six days after the Commission's September 24th order authorizing operations, the Weymouth Compressor suffered another emergency shutdown when the "loss of power on a 129-[volt] circuit" led to the "release of approximately 195,000 cubic feet" of gas. ROOT CAUSE FAILURE ANALYSIS INVESTIGATION REPORT: WEYMOUTH COMPRESSOR STATION SEPTEMBER 30, 2020 BLOWDOWN EVENT at ii (Dec. 22, 2020), J.A. 743.

The Fore River Residents requested rehearing of the In-Service Authorization Order.[2]   They argued that the two emergency shutdowns of the Weymouth Compressor, which the Commission had not considered when it authorized operations to begin, necessitated a new "situational assessment[.]"   In-Service Authorization Rehearing Request at 3, J.A. 386.   Such a review, the Fore River Residents argued, was especially important given the potentially harmful effects that the two large releases of natural gas could have had on nearby communities with heightened vulnerability to the Covid-19 pandemic.   They also argued that, in light of the incidents, the Commission should "reexamine the * * * core circumstances concerning project need [and] project safety" underpinning the original Certificate Order.   In-Service Authorization Rehearing Request at 5, J.A. 388.

The Fore River Residents' rehearing petition was initially denied by default when the Commission failed to take timely action on it.   *See generally Allegheny Def. Proj. v. FERC*, 964 F.3d 1, 16–17 (D.C. Cir. 2020) (en banc).   Several months later, the Commission requested fresh briefing on the rehearing petition and asked the parties to address a number of specific questions, including whether it should "reconsider" the operation of the Weymouth Compressor "in light of any changed circumstances since the project was authorized[.]"   Order Establishing Briefing, 174 FERC ¶ 61126, at ¶ 2 (Feb. 18, 2021), J.A. 453.

---

[2]   Only the City of Quincy, the Town of Braintree, and Fore River Residents Against the Compressor Station are petitioners in Case No. 22-1147 and seek review of the In-Service Authorization rehearing decision.

In their supplemental brief, the Fore River Residents argued that the compressor's "operation[s] must cease" because, among other things, "[s]afety was not considered in the granting of the original certificate," as evidenced by the two emergency shutdowns within just weeks of the Commission's decision authorizing operations to commence. J.A. 657.

After considering the supplemental briefing, the Commission unanimously reaffirmed the denial of rehearing. It held that the process of authorizing a project to come online could not be used as an opportunity to "relitigate the certificate proceeding[.]" 2022 Rehearing Order ¶ 16, J.A. 1376. And nothing in the Natural Gas Act or any regulation or decision of the Commission requires a situational assessment with regard to a specific project. 2022 Rehearing Order ¶ 21, J.A. 1379–1380. So the only relevant question in deciding whether to allow service to begin was whether Algonquin had complied with the certificate.

Turning to that question, the Commission found that the Fore River Residents "have not identified—and we have not found—any violations of the Certificate Order." 2022 Rehearing Order ¶ 17, J.A. 1377. The Commission noted, in particular, that the unplanned releases of natural gas during the two emergency shutdowns were "not beyond the range of those contemplated by the Commission in the certificate proceeding[.]" 2022 Rehearing Order ¶ 19, J.A. 1378. Given the absence of any record evidence showing deviation from the certificate, there was no basis on which to deny Algonquin permission to bring the Project, including the Weymouth Compressor, online. 2022 Rehearing Order ¶¶ 18–19, J.A. 1377–1378.

Chairman Glick concurred in the denial of rehearing. He acknowledged that the certificate was final, and that nothing in

the Certificate Order or the factual record offered any "legal basis" to prevent the compressor from entering service. Glick Concurrence to 2022 Rehearing Order ¶¶ 2–3, J.A. 1385–1386.

The Fore River Residents timely petitioned for review in both cases, and we ordered them consolidated.

## II

In the first petition, the Fore River Residents seek review of the Extension Order and the denial of rehearing. In the second, they seek review only of the Commission's denial of rehearing of the In-Service Authorization Order. We lack jurisdiction to consider either petition, so we dismiss them both.

## A

We lack Article III jurisdiction over the Extension Order petition, No. 22-1146, because the petitioners have failed to demonstrate standing and the case is moot. *See Food & Water Watch v. Department of Agric.*, 1 F.4th 1112, 1117 n.3 (D.C. Cir. 2021) ("Both mootness and standing pertain to whether there is a proper case or controversy before the court.").

To invoke the power of this court to review the Extension Order, the Fore River Residents must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The petitioners have satisfied the first two elements by demonstrating injuries flowing from "the siting of the compressor station, including depressed property values, increased noise and air pollution, visual blight, and heightened safety risks." *Myersville*

*Citizens for a Rural Cmty. v. FERC*, 783 F.3d 1301, 1317 (D.C. Cir. 2015); *see, e.g.*, Hayden Mot. Intervene at 2–3, J.A. 11–12 (discussing the Project's impact on property values, noise and air pollution, and safety risks). All of those injuries are directly traceable to the Commission's decision because, had it denied the extension motion, the Weymouth Compressor could not have been built.

The trouble for the Fore River Residents lies in the redressability prong of Article III standing. When, as here, a petition for review of agency action raises objections to the process by which the agency arrived at its decision, we may redress the petitioner's underlying injury by ordering a procedurally proper do-over in which the agency might reach a conclusion more favorable to the petitioner. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007) (Standing assumed if there is "some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant."); *Hawkins v. Haaland*, 991 F.3d 216, 224–225 (D.C. Cir. 2021) ("Claims for procedural violations also receive a 'relaxed redressability requirement' in which the plaintiff need only show that 'correcting the alleged procedural violation *could* still change the substantive outcome in the [plaintiff's] favor,' not 'that it *would* effect such a change.'") (quoting *Narragansett Indian Tribal Historic Pres. Off. v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020)).

Here, the Fore River Residents object that a staff member rather than the full Commission issued the Extension Order; that he did so after too little time to properly analyze the existence of good cause; and that he failed to provide any time for project opponents to object. In the ordinary case, if the Fore River Residents were to prevail, we could remedy their injury by directing full Commission review with ample opportunity for public comment, accompanied by a reasoned

explanation of the extension decision. *See, e.g.*, *American Pub. Gas Ass'n v. Department of Energy*, No. 22–1107, 2023 WL 4377914, at *12–13 (D.C. Cir. July 7, 2023) (remanding agency decision for notice and comment and for further explanation).

This is the rare case in which no such remedy could be ordered. The Commission has already given the Fore River Residents exactly the reconsideration that redresses their procedural objection. In responding to the Fore River Residents' rehearing petition, the Commission invited extensive briefing, took weeks to consider that record, and ultimately ratified the initial decision and explained why the extension was granted for good cause. *See* 2020 Rehearing Order ¶¶ 18–36, J.A. 335–342. In other words, the full Commission independently came to the same decision that the extension should have been granted, and it did so with none of the procedural flaws about which the Fore River Residents complain. *Cf. Murray Energy Corp. v. FERC*, 629 F.3d 231, 236 (D.C. Cir. 2011) ("Given that the Commission had authority to issue the Construction Order, the Commission's subsequent ratification resolved any potential delegation problems."). Because the Commission has already remedied each of the complaints raised, there is no relief for this court to order.

Importantly, the Fore River Residents do not raise any specific objection to the Commission's own process on rehearing or to the substance of its decision. At most, they argued for the first time in their reply brief that the Commission's ratification of the extension was "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law" because it "doubled down in an inexplicable effort to condone the flawed process" followed by the Branch Chief in the first instance. Fore River Residents

Reply Br. 1, 9. That will not suffice. Arguments raised for the first time in a reply brief are forfeited. *See American Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) ("We need not consider this argument because plaintiffs have forfeited it on appeal, having raised it for the first time in their reply brief.").

Anyhow, the Fore River Residents identify no specific procedural step that ought to have been done differently in their own case and no process that we could order the Commission to undertake on remand, other than that which has already been done. Rather, the Fore River Residents made clear at argument that they object primarily to "[t]he precedent this ratification has set." Oral Arg. Recording at 9:10–9:14. But fixing that precedent would not make a whit of difference to their case, and thus is not an available Article III remedy. *Cf. Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

For many of those same reasons, the case is moot. A case becomes moot when, among other things, "the court can provide no effective remedy because a party has already obtained all the relief that [it has] sought." *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)) (internal quotation marks omitted). In *Schmidt*, a veteran argued that the denial of his claim for increased disability benefits was procedurally defective because it was issued by the wrong administrative tribunal. *Id.* But the "claim was rendered moot" when the correct tribunal "itself evaluated and made a determination on Schmidt's application." *Id.*

That same logic extends to the Fore River Residents' arguments concerning the timing of the Extension Order and the lack of opportunity to object. The fact that the full Commission adopted the Branch Chief's order after weeks of consideration, and did so on a fully developed record in which the Fore River Residents submitted an extensive brief, "resolved" any remaining procedural defects. *Murray Energy*, 629 F.3d at 236. No concrete controversy remains between the parties. *Id*. (The Commission "resolved any potential delegation problems" with a Branch Chief's extension order by "adopt[ing]" the order "as [its] own" after full consideration.) (internal quotation marks omitted); *see also Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 303 (D.C. Cir. 2014) (Once petitioners "have received all the relief they sought, their petition is moot and must be dismissed.").

In short, because the Fore River Residents have already received all of the procedural relief they requested and have not identified any procedural injury that survived the Commission's thorough reconsideration of the Extension Order, we lack jurisdiction to hear their petition and must dismiss it.

**B**

We also lack statutory jurisdiction to consider the Fore River Residents' second petition for review, which challenges the Commission's order allowing the Weymouth Compressor to be put into service.

The Commission took three actions related to the entry of the compressor into service: (1) It granted authorization to bring the Project online; (2) it denied rehearing of that decision; and (3) following further briefing, it again denied rehearing.

The Residents have repeatedly made clear that their challenge addresses exclusively the last of those actions—the second denial of rehearing. *See* Fore River Residents Opening Br. iii (listing as the only order on review the "Commission's Order on Briefing and Addressing Arguments Raised on Rehearing, January 20, 2022"); Fore River Residents Reply Br. 5 ("The Petitioners are aggrieved by * * * [the] Order on Briefing and Addressing Arguments Raised on Rehearing * * * issued by the Commission on January 20, 2022[.]"). They specifically disavow any challenge to the initial order green-lighting operations. Fore River Residents Reply Br. 5 n.1 ("[T]he 2020 Authorization Order is not the Order under Appeal"); Fore River Residents Reply Br. at 6 ("[T]he Petitioners have not challenged the Commission's Authorization Order issued on September 24, 2020[.]"); Oral Arg. Recording at 17:52–17:59 ("Unequivocally, we are not challenging the September 24th, 2020 Authorization.").[3]

The Natural Gas Act creates two necessary preconditions to judicial review of a Commission decision. First, we may review only "an order issued by the Commission[.]" 15 U.S.C. § 717r(b). Second, we may review that order only if the petitioner first files an "application to the Commission for a rehearing" of that initial decision. *See id.* § 717r(a); *see generally Allegheny Def. Proj.*, 964 F.3d at 4–5. So the

---

[3] The Fore River Residents also do not address the Commission's first denial of rehearing in November 2020, presumably because that decision was an automatic statutory denial of rehearing due to the Commission's failure to act, devoid of substantive analysis. *See* Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration at 1, J.A. 423; 15 U.S.C. § 717r(a). To the extent the Fore River Residents' challenge includes the first denial of rehearing, it suffers from the same jurisdictional issues as the second denial of rehearing.

court's statutory jurisdiction requires both a substantive order to review and a rehearing petition that follows it.

The Fore River Residents' petition comes up short on both fronts.

First, they fail to challenge any substantive "order" by the Commission within the meaning of the Natural Gas Act. More specifically, the Fore River Residents challenge only the denial of rehearing. But under the Natural Gas Act, an order denying rehearing is not the type of order that, standing alone, can be the basis of our review. The statute distinguishes an "order" from the "application to the Commission for rehearing" that follows it. *See* 15 U.S.C. § 717r(a). That textual order of operations indicates that the disposition of the application for rehearing is not, without more, a reviewable "order." *See City of Oconto Falls v. FERC*, 204 F.3d 1154, 1159 n.4 (D.C. Cir. 2000) ("Although a rehearing order can be challenged together with an 'aggrieving' order, * * * a rehearing order cannot be challenged on its own[.]"); *see also DTE Energy Co. v. FERC*, 394 F.3d 954, 961 (D.C. Cir. 2005) ("But while DTE Energy sought rehearing of the April 11 Order, its petition for review by the court challenges only the November 17, 2003 Rehearing Order. Because DTE Energy failed to identify the aggrieving order in its petition for review, the court cannot consider DTE's challenge to the Commission's November 17, 2003 Rehearing Order."). As such, the Natural Gas Act deprives this court of jurisdiction to review just a denial of rehearing.

There is an exception if the Commission, on rehearing, substantively "modifies the result reached in the original order[.]" *Southern Nat. Gas Co. v. FERC*, 877 F.2d 1066, 1072–1073 (D.C. Cir. 1989); *see Tennessee Gas Pipeline Co. v. FERC*, 871 F.2d 1099, 1109–1110 (D.C. Cir. 1989). That

modification of the original order would, in effect, create a new order subject to judicial review in its own right. *Southern Nat. Gas Co.*, 877 F.2d at 1072–1073.

No such modification occurred here. The Commission reached the very same conclusion that it had in the first instance; "it simply marshaled new arguments to support the old outcome." *Columbia Gas Transmission Corp. v. FERC*, 477 F.3d 739, 742 (D.C. Cir. 2007). The fact that the Commission tacked on some additional reasons to justify reaching the same conclusion does not "transform its order denying rehearing into a new 'order[.]'" *Id.* (quoting *Southern Nat. Gas Co.*, 877 F.2d at 1073); *City of Oconto Falls*, 204 F.3d at 1159 n.4 ("[A] rehearing order does not constitute a new order unless it significantly modifies the original order.").

But even were we to construe the Commission's denial of rehearing as a reviewable new "order," that would not change anything. That is because the statute strictly requires that every single "order" we review be accompanied by an "application to the Commission for rehearing." 15 U.S.C. § 717r(a). Yet the Fore River Residents never sought rehearing of the decision they challenge—the second denial of rehearing. *See Canadian Ass'n of Petrol. Producers v. FERC*, 254 F.3d 289, 296–297 (D.C. Cir. 2001) ("[O]n matters where the rehearing order introduces a new source of complaint[,]" the petitioner must "file another rehearing petition."). So that pathway is also closed.

In short, the denial of rehearing is not a reviewable order, so the Fore River Residents may not obtain judicial review under 15 U.S.C. § 717r(b). And even if it were a reviewable order, their petition would be jurisdictionally deficient because they failed to request rehearing of it. For this reason, we dismiss the second petition for lack of statutory jurisdiction.

## III

For the foregoing reasons, both petitions are dismissed for lack of jurisdiction.

*So ordered.*