# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-7004

September Term, 2024

FILED ON: FEBRUARY 26, 2025

MARY CECILIA WILLIAMS,
        APPELLANT

v.

JULIO E. AVILES, DOING BUSINESS AS UNIVERSAL AIR DUCT SERVICES AND FREDERICK MUTUAL INSURANCE COMPANY,
        APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-00931)

Before: PAN and GARCIA, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the order of the district court issued on December 22, 2023, entering judgment in favor of appellee as to all counts, be **AFFIRMED**.

\* \* \*

Pro se appellant Mary Williams sued contractor Julio Aviles for alleged problems with his installation of an HVAC system in her home in the District of Columbia. The district court granted Aviles's motion to strike Williams's expert witness and granted summary judgment in favor of Aviles on her common law claims of negligence, breach of contract, and fraudulent misrepresentation. The district court also entered a verdict in favor of Aviles after a bench trial on Williams's claim that Aviles violated the D.C. Consumer Protection Procedures Act (CPPA). In this appeal, Williams claims that the district court abused its discretion in excluding Williams's

late-disclosed expert witness; erred in ruling on summary judgment that Williams failed to provide evidence supporting essential elements of her common law claims; and clearly erred at trial when it credited Aviles's testimony that he did not make affirmative misrepresentations in violation of the CPPA. Discerning no error, we affirm the judgment of the district court.

## I.

Plaintiff Mary Williams hired defendant Julio Aviles to install a new Trane-model gas furnace in her home in November 2016. When Aviles installed the furnace, he connected a new gas line from the furnace to the existing gas line. According to Aviles, he leak-tested the piping, including the fitting connecting the gas line, and did not detect any leaks. It is undisputed that Aviles was not licensed to work as an HVAC technician in the District of Columbia, nor was he certified to purchase and install Trane-model equipment.

In January 2017, Williams visited her doctor for "flu symptoms." A.A. 2. In April 2017, Williams went to the emergency room and was admitted to the hospital for migraine headaches, difficulty breathing, and other symptoms. Upon returning home, she fell ill again. At no point did Williams smell gas in her house. But after her hospital visit, a Washington Gas technician inspected her furnace and found a gas leak on a pipe fitting and noted an odor in the home. The next day, Aviles came to Williams's house for the first time since he installed the furnace. He confirmed that there was a small leak on the pipe fitting and fixed that leak. Later, in 2018, Williams sold her house for "thousands of dollars" less than the asking price. A.A. 3. A home inspection commissioned by the buyer reported several "minor" and "major" issues throughout the house, including in connection with the HVAC system. S.A. 29–31, 40–41.

On the theory that Aviles's unlicensed and faulty furnace installation caused her sickness and decreased the value of her home, Williams, acting pro se, filed suit against Aviles in the Superior Court of the District of Columbia. Aviles removed Williams's suit to the district court. Williams's amended complaint asserted claims of negligence, breach of contract, fraudulent misrepresentation, and violation of the CPPA.[*]

During discovery, in September 2020, Williams provided a "list of potential experts," including certain "HVAC Expert Installers." A.A. 96–100. The "HVAC Expert Installers" were described as "Tim," a "Certified Technician" from Frosty's Heating and Air Conditioning, who inspected the HVAC system "within days" after Aviles's leak repairs; an unnamed "Certified Heating and Air Technician" from Jiffy, who was hired by the home's buyer to inspect the HVAC system in 2019; and an unnamed "Certified Trane Dealer" from McCrea Heating and Air Conditioning, who conducted an inspection in 2020. A.A. 99–100. Williams asserted that the technicians would testify that the "installation was poorly done and incomplete," that "the overall workmanship was substandard," and that the installation was "[s]hoddy." *Id.* Williams did not disclose any expert who would describe the standard of care for furnace installation, evaluate

---

* Williams's complaint also brought a breach of contract claim against Aviles's insurer, Frederick Mutual Insurance Company. The district court dismissed that claim as premature, and we summarily affirmed that dismissal in an order dated July 2, 2024.

Aviles's installation against that standard, or opine on the cause of the gas leak. In fact, Williams told Aviles and the district court that she did not "plan to retain a mechanical engineer for trial" because she did not think she needed one to prove her theories of *res ipsa loquitur* or negligence *per se*. A.A. 7; *see also* ECF 73 at 5; ECF 78 at 6.

Aviles disclosed a "preliminary" engineering report from a licensed engineer in February 2021. A.A. 4–5. The engineer's report reviewed Aviles's compliance with D.C. Residential Codes and the possible causes of the gas leak. It opined that "[t]here is no evidence" that the leak "was a result of [Aviles's] installation." ECF 69-16 at 7–8. As part of a supplemental disclosure in April 2021, in which Aviles designated certain medical experts, Aviles "reissued a verbatim disclosure" of the engineering report. A.A. 5; ECF 67 at 4.

Discovery closed in June 2021. One day before the discovery deadline, Williams moved to extend discovery. She requested "more time for the parties to resolve a discovery dispute regarding [her] subpoena of sales records" that she considered relevant to her fraud claim. ECF 53 at 1. The court denied the motion.

In September 2021 — "more than three (3) months after the close of discovery, six (6) months after the deadline for Plaintiff to identify rebuttal experts, and eleven (11) months after the deadline for Plaintiff's initial [] expert disclosures" — Williams served an expert disclosure for an engineer named Brian Bramel. A.A. 5–6 (cleaned up). The disclosure asserted that Bramel would opine that "the proximate cause of the gas leak was Mr. Aviles not following applicable gas building codes and industry standards in installing the gas lines." A.A. 5 (cleaned up).

The parties filed their motions for summary judgment in accordance with the district court's summary judgment schedule. Along with his motion, Aviles filed a motion to strike Williams's untimely expert disclosure of Brian Bramel and his accompanying report.

The district court granted Aviles's motion to strike, ruling that Williams failed to adequately justify the tardiness of her expert disclosure of Bramel. The district court also granted Aviles's summary judgment motion as to all of Williams's common law claims. But the district court permitted the CPPA claim to go to trial based on two questions of fact: whether Aviles told Williams that he was licensed, and whether Aviles's failure to disclose his unlicensed status was "material." A.A. 20. After a bench trial, the district court ruled in favor of Aviles on the CPPA claim, finding that the case "largely [came] down to credibility determinations," and crediting Aviles over Williams. A.A. 28–29.

Williams filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

**II.**

The district court did not abuse its discretion in granting Aviles's motion to strike Williams's late-filed expert disclosure. *See United States v. Day*, 524 F.3d 1361, 1367 (D.C. Cir. 2008) (exclusion of expert testimony is reviewed for abuse of discretion).

3

All agree that Williams failed to timely disclose Brian Bramel as an expert witness. Under Federal Rule of Civil Procedure 26(a)(2)(D), a party "must" make the required expert disclosures "at the times and in the sequence that the court orders." A party that fails to do so "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Although Williams argued that the untimeliness of her disclosure should have been excused, the district court was not required to accept her argument that the "public interest against unskilled and unscrupulous contractors" weighed in her favor. Williams Br. 23. Moreover, the district court reasonably concluded that Williams failed to exercise diligence in seeking an expert, as she initially chose not "to retain a mechanical engineer for trial" because she did not think she needed one; and once the need became apparent at Aviles's deposition, she had seven weeks to secure an expert before the close of discovery but failed to do so. ECF 73 at 5; *see also* ECF 78 at 6. The district court further reasonably concluded that Williams's late disclosure prejudiced Aviles and was not harmless. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 429–30 (D.C. Cir. 2014). On this record, Williams has not cleared the "particularly high bar" of showing that the district court abused its discretion; the district court "simply exercis[ed] its judgment about whether to relieve a party from an unexcused (*i.e.*, no good cause) failure to comply with the Rules." *Morrissey v. Mayorkas*, 17 F.4th 1150, 1157 (D.C. Cir. 2021) (cleaned up).

## III.

"We review a grant of summary judgment de novo." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact," and "[t]he moving party is entitled to a judgment as a matter of law." *Id.* at 322–23 (cleaned up); Fed. R. Civ. P. 56(c)(2). Applying this well-established standard, we conclude that the district court properly granted summary judgment in favor of Aviles on Williams's claims of negligence, breach of contract, and fraudulent misrepresentation.

## A.

On the negligence claim, the district court concluded that Williams had not provided evidence of the standard of care for installing a furnace. A.A. 11–12. The court also rejected Williams's alternative negligence theory of *res ipsa loquitur*, concluding she "comes nowhere close" to making the required showing that Aviles both negligently installed the furnace and his negligence "probably caused" the gas leak. A.A. 14. The court then concluded that D.C.'s licensing requirement does not create a "substantive standard of care, but rather an administrative requirement" and therefore did not support Williams's alternative negligence *per se* theory. A.A. 16 (cleaned up). Finally, the district court rejected her negligence *per se* theory for the "additional reason" that she had not proven that the "statutory violation was the proximate cause of her injuries." A.A. 17 (cleaned up).

"The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal

4

relationship between that deviation and the plaintiff's injury." *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (cleaned up). Williams has not challenged and thus has forfeited any challenge to the district court's conclusion that an expert was required to prove the standard of care in this case. *See* A.A. 10–13 (noting that "[w]hen the standard of care is 'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror,' the plaintiff must prove with expert testimony both the standard of care and that the defendant failed to adhere to it" (quoting *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. Cir. 2014)); *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in [her] opening brief."). Williams's engineering expert was properly excluded because she failed to timely disclose his proposed testimony and report, as discussed *supra*. And Williams did not establish the standard of care through other experts, such as the "HVAC Expert Installers" that she timely disclosed. Even if those experts could have opined on the requisite standard of care, Williams's disclosures for the "HVAC Expert Installers" did not include expert reports that addressed the pertinent issues. *See* Fed. R. Civ. P. 26(a)(2)(B) (providing expert disclosures must be accompanied by "a written report"); *see also* A.A. 99–100 (providing no such report).

Williams fares no better with her alternative theory of negligence that relies on the doctrine of *res ipsa loquitur*. "The principle of *res ipsa loquitur* permits a jury to draw an inference of negligence based upon special circumstances where direct evidence of negligence is lacking." *Bell v. May Dep't Stores Co.*, 866 F.2d 452, 455 (D.C. Cir. 1989). For *res ipsa loquitur* to apply: "(1) The event must be of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of plaintiff." *Id.* (cleaned up). A plaintiff cannot rely on *res ipsa loquitur* when "causes other than the defendant's negligence might just as well have produced the accident." *Id.* at 456. Here, Aviles's unrebutted expert testimony identified several potential causes of the gas leak that were unrelated to Aviles's work in installing the furnace, including "intentional or incidental contact of the ¾ inch union by materials stored in the utility closet, manipulation by others, or contact with or vibration of gas piping upstream of the equipment shutoff valve." ECF 69-16 at 8. Although Williams disclosed HVAC technicians who would testify that Aviles's workmanship was "substandard," none of her experts opined on the cause of the gas leak. A.A. 99–100.

Williams's second alternative theory of negligence *per se* also fails. Under a negligence *per se* theory "the plaintiff may, in certain circumstances and under specified conditions . . . rely on a statute or regulation as proof of the applicable standard of care." *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 578 (D.C. Cir. 1996). Here, Williams forfeited any argument that D.C.'s housing code creates a standard of care by not raising that argument in her opening brief. *See Fore River Residents Against the Compressor Station v. FERC*, 77 F.4th 882, 889 (D.C. Cir. 2023) ("Arguments raised for the first time in a reply brief are forfeited."). And we need not decide whether the district court correctly ruled that D.C.'s licensing scheme cannot provide a standard of care because, in any event, Williams has failed to prove causation. *See Twyman v. Johnson*, 655 A.2d 850, 852 (D.C. 1995) (under negligence *per se* theory, plaintiff "would still bear the burden of showing that the negligence proximately caused the damage" (cleaned up)). The district court provided an "additional reason" — lack of causation — for rejecting Williams's negligence

*per se* claim, A.A. 16–17, and Williams has forfeited any challenge to that ruling on appeal. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (noting an argument is not preserved by "merely [] mention[ing] a possible argument in the most skeletal way").

**B.**

With respect to the breach of contract claim, the district court concluded that Williams had not proven the required element of damages. *See Brown v. Sessoms*, 774 F.3d 1016, 1024 (D.C. Cir. 2014) ("To prevail on a claim of breach of contract, a party must establish . . . damages caused by breach." (cleaned up)). In her amended complaint, Williams sought "an estimated $2,550.00 [for] loss in real property value" and "$45,350.36 for pain and suffering and compensation for the time spent having to coordinate repairs." ECF 23 at 5. The court accurately noted, however, that Williams "supplied no evidence of any out-of-pocket expenses paid to remedy [the] alleged mistakes." A.A. 18 n.5. And "to the extent she claim[ed] a loss in home value," the court determined that the "assertion [was] not supported by any fact or expert evidence." *Id.* On appeal, Williams again points to no record evidence to support her claim of damages. We therefore affirm the district court's entry of summary judgment for Aviles on the breach of contract claim.

Williams forfeited her alternative claim that the contract was "void and unenforceable" as "made in violation of a licensing statute that is designed to protect the public," Williams Br. 14, because she raises it for the first time on appeal. *See Salazar v. District of Columbia*, 602 F.3d 431, 437 (D.C. Cir. 2010) ("Generally, an argument not made in the trial court is forfeited and will not be considered absent exceptional circumstances." (cleaned up)). Her argument that "the invalidity of a contract may not be waived" misses the mark. Williams Br. 16. Although we may prevent an unlicensed contractor from recovering money under an illegal contract, even when the other party fails to timely raise the illegality of the contract, *see Noonan v. Gilbert*, 68 F.2d 775, 776 (D.C. Cir. 1934), that is not the situation here. Williams does not seek recovery of funds paid under the contract and does not explain how our duty to "refuse . . . to *enforce* a contract that offends public policy," *id.* (emphasis added), supports her affirmative claim for damages based on a *breach* of contract.

**C.**

On her fraudulent misrepresentation claim, the district court first addressed Williams's argument that Aviles promised he would sell her a "90% furnace." A.A. 18–19. Because the contract expressly identifies an "80% furnace," the court precluded Williams's argument under the parol evidence rule. *Id.* The court then addressed Williams's argument that Aviles fraudulently induced her to enter into a sales agreement by holding himself out as a licensed and certified contractor. The court rejected that claim because Williams offered no testimony establishing the difference between the amount paid and the market value of the thing acquired. She thus had not shown any harm resulting from the alleged misrepresentations, as required for a fraudulent misrepresentation claim. *See Chedick v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998) ("To prevail, the plaintiff must . . . have suffered some injury as a consequence of [her] reliance on the misrepresentation.").

6

Williams has not developed any argument challenging the district court's conclusion that she failed to show any injury from her reliance on the alleged misrepresentation. Nor did she make any argument in her opening brief about Aviles's alleged promise to sell her a larger HVAC unit. Those claims are thus forfeited. *See Schneider*, 412 F.3d at 200 n.1; *Fore River Residents*, 77 F.4th at 889.

Finally, Williams has not adequately raised nor developed her argument that she "was entitled to summary judgment as a matter of law" on her common law misrepresentation or CPPA claims. Williams Br. 18. Williams's challenge to the district court's grant of summary judgment to Aviles did not preserve an argument that she herself was entitled to summary judgment.

**IV.**

The district court properly concluded that Williams "failed to prove up her claim of the CPPA violation by clear and convincing evidence." A.A. 33. Under the CPPA, it is unlawful "for any person to engage in an unfair or deceptive trade practice" by, among other things, "represent[ing] that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have." D.C. Code § 28-3904(b). Following a bench trial, "[w]e review the district court's factual findings for clear error and its legal conclusions *de novo*." *Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010). Additionally, we review for abuse of discretion a district court's determination that an argument was forfeited. *See GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012).

At trial, the district court asked Williams to clarify her theory of the CPPA violation. Williams said that she "asked [Aviles] and he affirmatively stated" his licensure status "over the phone." S.A. 193. The court then confirmed several times that Williams's "theory of the case" and "what [she] would like [the court] to find" was that she affirmatively asked about, and Aviles affirmatively misrepresented, his licensure status. S.A. 193–96. Based on Williams's responses, the district court concluded that her "claimed violation of the CPPA rests on affirmative misrepresentations, not material omissions." A.A. 28. That ruling was not an abuse of discretion. *See GSS Grp. Ltd.*, 680 F.3d at 812.

In determining whether Aviles made affirmative misrepresentations, the district court observed that the matter "largely [came] down to credibility determinations," which turned on the parties' "different versions of their initial conversation." A.A. 28. The court resolved the conflicting evidence by crediting Aviles over Williams. It noted "multiple inconsistencies between plaintiff's trial testimony and her deposition testimony on critical issues," as well as "other, albeit less central, discrepancies." A.A. 28–29. Although Aviles's answer to Williams's amended complaint stated that "Defendant admits . . . that he advised plaintiff that [his company] was an authorized Trane dealer," A.A. 30–31, the court noted that Williams had "arguably waived" any claim that Aviles's answer could "be construed as [a] judicial admission[], to which he is bound," because Williams had failed to make that argument. A.A. 31. Aviles testified that "he did not know why his Answers contained the representations that they did," and that the representation was "inaccurate." A.A. 32. Further, the court found that Aviles's, "denials of Trane certification have otherwise been consistent," including in his interrogatories. A.A. 32. In the end, although

7

Aviles's answer "raise[d] some questions for the [c]ourt," the court found his "testimony to be credible." A.A. 30, 32. The court therefore concluded that Williams "failed to prove up her claim of the CPPA violation by clear and convincing evidence" and entered judgment on the CPPA claim for Aviles. A.A. 33.

The district court did not clearly err when it found that Aviles did not make the alleged affirmative misrepresentations based on a well-supported evaluation of the witnesses' credibility. *See Carter v. Bennett*, 840 F.2d 63, 67 (D.C. Cir. 1988) ("The district court's credibility determinations are entitled to the greatest deference from this court on appeal."). Moreover, the district court did not abuse its discretion when it credited Aviles's testimony that the statement in his answer was inaccurate. Ultimately, "we cannot second-guess the trial court's credibility determinations, and . . . we are not left with the definite and firm conviction that a mistake has been committed." *Id.* (cleaned up). We therefore uphold the district court's ruling that Williams "failed to prove up her claim of the CPPA violation by clear and convincing evidence." A.A. 33.

For the foregoing reasons, we affirm the judgment of the district court.

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**PER CURIAM**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:     /s/
        Daniel J. Reidy
        Deputy Clerk

8