# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 25-1064**

**September Term, 2025**

FILED ON: JUNE 5, 2026

PJM TRANSMISSION OWNERS, ET AL.,
                PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
                RESPONDENT

PJM INTERCONNECTION, L.L.C., ET AL.,
                INTERVENORS

Consolidated with 25-1100

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

Before: SRINIVASAN, *Chief Judge*, PAN and GARCIA, *Circuit Judges*

## J U D G M E N T

These petitions for review were considered on the record from the Federal Energy Regulatory Commission, the briefs and oral arguments of the parties, and the briefs of amici. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the petitions for review be **DENIED**.

\*     \*     \*

PJM Interconnection, L.L.C. ("PJM") is a Regional Transmission Organization ("RTO") that operates power transmission facilities serving the Mid-Atlantic states and the District of Columbia. The Planning Protocol that governs regional expansions and improvements to PJM's

electrical grid is contained in PJM's Operating Agreement. The Operating Agreement requires planning decisions to be approved by a Members Committee, comprising representatives from five sectors of market participants: generation owners, other suppliers, electric distributors, end-use customers, and transmission owners.

In response to a proposal from some of its Transmission Owners, PJM sought to streamline the grid-planning process by moving the Planning Protocol from the Operating Agreement to PJM's Tariff, which would allow PJM to make planning decisions unilaterally, subject only to approval by the Federal Energy Regulatory Commission ("FERC"). To implement that change, PJM and the Transmission Owners proposed to amend the Operating Agreement, the Tariff, and the Owners Agreement (the contract under which the Transmission Owners consent to PJM's operation of their transmission facilities). PJM and the Transmission Owners first presented their proposal to the Members Committee, which soundly rejected it.

Undeterred, PJM and the Transmission Owners presented their proposal to FERC. PJM filed (1) a complaint under section 206 of the Federal Power Act ("FPA") arguing that it was unreasonable for the Planning Protocol to be in the Operating Agreement, 16 U.S.C. § 824e(a); and (2) an FPA section 205 filing proposing to add the Planning Protocol to the Tariff, *id.* § 824d. The Transmission Owners made a third filing, seeking various changes to the Owners Agreement under section 205. PJM and the Transmission Owners submitted the three filings as a package deal, underscoring that "acceptance of the [Owners Agreement] Amendments is a 'prerequisite' to granting the relief" sought by PJM's filings related to the Operating Agreement and the Tariff. J.A. 73. They further stressed that the "Amendments [to the Owners Agreement] are a carefully negotiated integrated package of reforms that are not severable." J.A. 10 n.48.

FERC rejected the package of reforms. The Commission determined that eight of the proposed amendments to the Owners Agreement were not just and reasonable. And it explained that because the deal was an "integrated package," the disapproval of even one of those amendments was sufficient to doom the entire proposal. J.A. 10. FERC separately concluded that PJM had not carried its burden to show that the placement of the Planning Protocol in the Operating Agreement was unjust and unreasonable.

PJM and the Transmission Owners sought rehearing, which FERC granted in part. FERC reaffirmed its determinations about the eight Owners Agreement amendments, but held that the dispute about the location of the Planning Protocol was moot because FERC's rejection of the Owners Agreement amendments required it to reject the whole package of filings.

The Transmission Owners petitioned this court for review. Most transmission owners petitioned together, but Public Service Electric and Gas Co. filed its own petition, No. 25-1100. We consolidated the Transmission Owners' petitions, and PJM intervened on their side. Various other PJM members, led by American Municipal Power, Inc., intervened in support of Respondent FERC. We have jurisdiction under 16 U.S.C. § 825*l*(b).

Because we conclude that FERC's disapproval of at least one of the proposed amendments

to the Owners Agreement was not arbitrary and capricious, we uphold FERC's rejection of the integrated package of reforms and deny the petitions for review.

## I.

In rejecting the Transmission Owners' plan to amend the Owners Agreement, FERC examined and disapproved eight proposed changes to different aspects of the existing Agreement. To prevail in this court, the Transmission Owners must "run the table" and persuade us to set aside all eight of FERC's determinations. That is because the Transmission Owners presented an integrated, non-severable package of reforms, meaning that any single defect in the plan brings down the entire package. *See* J.A. 73 (noting that the Transmission Owners characterized the Owners Agreement amendments as a "prerequisite" to approval of the Planning Protocol transfer); J.A. 10 n.48 (describing the Owners Agreement amendments as a "carefully negotiated integrated package of reforms that are not severable").

To amend the Owners Agreement, the Transmission Owners proceeded under section 205 of the FPA, which allows utilities to alter their rates and terms with FERC's approval. When conducting a section 205 review of a filing by an RTO or utility, FERC plays only a "passive and reactive role." *Advanced Energy Mgmt. All. v. FERC*, 860 F.3d 656, 662 (D.C. Cir. 2017) (citation omitted). Nevertheless, the Transmission Owners bore the burden of demonstrating to FERC that their proposed changes to the Owners Agreement were "just and reasonable." *Me. Pub. Utils. Comm'n v. FERC*, 454 F.3d 278, 283 (D.C. Cir. 2006) (quoting 16 U.S.C. § 824d(a)). Moreover, FERC was required to ensure that PJM, as an RTO, remained "independent of any market participant[s]," including its Transmission Owners. 18 C.F.R. § 35.34(j)(1). Notably, even after a section 205 approval, the amended Owners Agreement would be subject to FERC's review under section 206 if a third party filed a complaint arguing that the approved amendments were "unjust, unreasonable, unduly discriminatory or preferential." 16 U.S.C. § 824e(a).

In reviewing FERC's actions, we will hold unlawful and set aside a determination that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "A decision is not arbitrary if it is reasonable and reasonably explained." *City of Salisbury v. FERC*, 36 F.4th 1164, 1170 (D.C. Cir. 2022) (cleaned up). FERC's analysis, moreover, merits additional weight where the Commission's application of the statutory standard "may rest on factual premises within the agency's expertise." *Pac. Gas & Elec. Co. v. FERC*, 113 F.4th 943, 951 (D.C. Cir. 2024) (cleaned up). Finally, the "just and reasonable" requirement "is obviously incapable of precise judicial definition, and we" historically have "afford[ed] great deference to the Commission" when it applies that standard. *Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 554 U.S. 527, 532 (2008).

## II.

As a threshold matter, Respondent-Intervenors contend that the Transmission Owners lack standing. They assert that the Transmission Owners have forfeited their right to seek review of FERC's rejection of three amendments to the "Planning Provisions" — a component of the Owners

Agreement — by not raising that issue before the Commission. And, relying on the non-severability of the integrated proposed plan, Respondent-Intervenors argue that the uncontested rejections doom the whole package of amendments, and that the Transmission Owners' other claims therefore are not redressable by this court. *See Fore River Residents Against the Compressor Station v. FERC*, 77 F.4th 882, 889 (D.C. Cir. 2023) (explaining there is no redressability in "the rare case in which no [agency reconsideration] remedy could be ordered"). We disagree with the underlying premise that the Transmission Owners failed to challenge the amendments to the Planning Provisions in the proceedings before FERC.

The allegedly forfeited argument involves proposed changes to the Planning Provisions, which address PJM's contractual obligations to the Transmission Owners in conducting regional planning. Respondent-Intervenors contend that the Transmission Owners forfeited their arguments about the Planning Provisions because they did not specifically argue to FERC that those particular amendments would give the Transmission Owners too much influence over the planning process. When before the Commission, however, the Transmission Owners addressed the issue of PJM's independence by generally faulting FERC for citing "no record evidence that supports its conclusion that the [Owners Agreement] Amendments increase the Transmission Owners' ability to control or influence changes to the Planning Protocol." J.A. 2153. The Transmission Owners also argued that one of the Planning Provisions, as amended, would still safeguard PJM's independence. J.A. 2162 ("[N]othing in the [Owners Agreement] Amendments alters the exclusive delegation to PJM in proposed section 4.1.4(a) to prepare the Regional Transmission Expansion Plan . . . ."). In our view, the Transmission Owners' specific argument that a Planning Provision maintained PJM's independence, combined with their many arguments generally defending PJM's independence under the new amendments, was sufficient to preserve their claim for our review.

## III.

Because the package of reforms is integrated and not severable, we must deny the petition for review if we uphold just one of FERC's determinations rejecting a proposed amendment to the Owners Agreement. We focus here on FERC's conclusion that the proposed change to Owners Agreement § 7.9 was not just and reasonable because it diminished PJM's independence.

The proposed amendment to § 7.9 could subject PJM to an additional procedure if it sought to revise or modify its Tariff, including the Planning Protocol, under section 205. Under the amended § 7.9, if any Transmission Owner "believes" that a proposed Tariff modification contravenes certain parts of the Owners Agreement, that Transmission Owner may require PJM to engage in dispute-resolution procedures:

> If either PJM or the [Transmission Owners] seek to revise or modify the PJM Tariff, including the Regional Transmission Expansion Planning Protocol, under Federal Power Act Section 205, and PJM or a [Transmission Owner] believes that such revisions or modifications contravene any part of Articles 2, 4, 5, 6 or 7 or Attachment B of the [Owners] Agreement, PJM and such [Transmission Owner] shall follow the dispute resolution procedures set forth

in Section 9.19.

> J.A. 216. The referenced dispute-resolution procedures would allow the objecting Transmission Owner to call for a ten-day delay in proceeding with the section 205 filing, and to demand an adjudication before a neutral arbiter.

FERC reasonably determined that this provision is unjust and unreasonable because it gives the Transmission Owners undue influence over Tariff modifications. As an RTO, PJM must adopt "a decision making process that is independent of control by any market participant or class of participants." 18 C.F.R. § 35.34(j)(1)(ii). FERC found that § 7.9 would give the Transmission Owners "an exclusive opportunity to affect what FPA section 205 filings PJM submits." J.A. 20. No other market participant would have a similar right. Citing previous cases where it "rejected provisions that would have provided transmission owners with exclusive influence or control over RTO FPA section 205 filings," FERC concluded this provision likewise would give the Transmission Owners "inappropriate influence or control" through their "ability to delay and potentially influence [PJM's] filings before they are submitted to the Commission." *Id.* FERC's determination was well supported by the record and Commission precedents, and therefore was not arbitrary and capricious.

The Transmission Owners argue that the dispute-resolution provision in § 7.9 should be approved because the same process applies without controversy in a different part of the Owners Agreement. They note that § 7.6 of the Agreement provides that if the Transmission Owners and PJM disagree about which of the two has the right to make a particular filing, and cannot resolve their differences, they must engage in dispute resolution before a neutral arbiter. That narrow use of dispute-resolution procedures in a different context has little bearing on the impact of amending § 7.9, which would constrain PJM's ability to make *any* change to its Tariff under section 205.

## IV.

The Transmission Owners mischaracterize the effect of FERC's order, arguing that it strips them of their own filing rights. Although FERC may not force the Transmission Owners "to cede their statutory right to file [Tariff] rate changes under section 205" to PJM, *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 3 (D.C. Cir. 2002), that is not what happened here. To the contrary, the Transmission Owners exercised their right to make a section 205 filing, and FERC duly evaluated their proposal. *Atlantic City* affirms that FERC may reject a section 205 filing "if it finds that the changes proposed by the public utility are not 'just and reasonable.'" *Id.* at 9 (quoting 16 U.S.C. § 824d(e)).

Finally, we reject the Transmission Owners' contention that FERC had to consider their proposal as a whole, weighing the benefits accruing from certain amendments against any harms inflicted by others and then passing judgment on whether the overall plan was "just and reasonable." That approach is not mandated by section 205, which requires that "all rules and regulations affecting or pertaining to [a utility's proposed] rates or charges shall be just and reasonable." 16 U.S.C. § 824d(a); *see also Del. Div. of Pub. Advoc. v. FERC*, 3 F.4th 461, 465–

69 (D.C. Cir. 2021) (reviewing distinct aspects of FERC's approval of an auction structure); *Citadel FNGE Ltd. v. FERC*, 77 F.4th 842, 855 (D.C. Cir. 2023) ("[W]e have repeatedly allowed the Commission to find components of a wholesale rate to be unjust and unreasonable without calculating their dollars-and-cents impact on the final wholesale or retail rate.").

For the foregoing reasons, the petitions for review are denied.

\*　　\*　　\*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:　/s/
Daniel J. Reidy
Deputy Clerk